# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-00975-COA

**TONY LEROY HEARN, SR.**                                                  **APPELLANT**

**v.**

**VARENA DENTON HEARN**                                                   **APPELLEE**

DATE OF JUDGMENT:              07/01/2014
TRIAL JUDGE:                   HON. MARIE WILSON
COURT FROM WHICH APPEALED:     WASHINGTON COUNTY CHANCERY
                               COURT
ATTORNEY FOR APPELLANT:        JASON EDWARD CAMPBELL
ATTORNEY FOR APPELLEE:         JAMES H. POWELL III
NATURE OF THE CASE:            CIVIL - DOMESTIC RELATIONS
TRIAL COURT DISPOSITION:       GRANTED DIVORCE, DIVIDED MARITAL
                               PROPERTY, AND AWARDED APPELLEE
                               REHABILITATIVE ALIMONY
DISPOSITION:                   AFFIRMED IN PART; REVERSED AND
                               REMANDED IN PART - 05/10/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., BARNES AND ISHEE, JJ.**

**LEE, C.J., FOR THE COURT:**

## PROCEDURAL HISTORY

¶1.     Tony and Varena Hearn were married in 2002.  Tony filed for divorce in the

Washington County Chancery Court on January 8, 2013, on the ground of habitual cruel and

inhuman treatment or, alternatively, irreconcilable differences.  Varena subsequently filed

a response and counterclaim.  The parties ultimately agreed to a divorce on the ground of

irreconcilable differences and submitted several issues, including equitable division and

alimony, to the chancellor for determination.

¶2. The chancellor granted the divorce, divided the marital assets, and awarded Varena $650 per month in rehabilitative alimony for three years. Tony filed a motion to amend or, in the alternative, a motion for a new trial. The chancellor requested briefs from both parties on the issues Tony raised in his motion, namely equitable distribution and alimony.

¶3. The chancellor amended the final judgment to correct calculations regarding the marital assets and also reduced Varena's award of rehabilitative alimony to $600 per month for six months.

¶4. Tony now appeals, asserting that the chancellor erred by (1) dividing the marital assets and debts; and (2) awarding Varena rehabilitative alimony.

**FACTS**

¶5. Tony and Varena were married for approximately ten years. The couple had no children together. During the marriage, Tony was employed as a truck driver with an adjusted gross income of $4,364.50 per month. Varena had several jobs during the marriage and, at the time of trial, was employed at Nissan with an adjusted gross income of $1,276.40 per month. Both parties were in good health. After the parties separated, Varena moved into her father's mobile home, which was located on five acres of land. This property was acquired during the parties' marriage, but was in Varena's name only and subject to a life estate by Varena's father. This property was adjacent to another five-acre property where the couple built their marital home. After separation, Tony remained in the marital home.

¶6. In addition to the two five-acre properties, Tony and Varena acquired four acres of land in the same vicinity. The chancellor determined the values of the three properties as

2

follows: $110,000 for the marital home; $16,000 for the five-acre property; and $14,500 for the four-acre property. The parties also acquired certain personal property, which the chancellor valued at $69,828. The only nonmarital property was a Chevy truck bought by Varena after the couple separated.

¶7. In addition to the couple's real and personal property, the chancellor determined the marital assets included the equity in the marital home ($36,421), Tony's checking account ($300), Varena's checking account ($400), and Tony's retirement account ($70,707.64). The chancellor determined the marital debts included the mortgage debt ($73,579), a GMC truck ($12,933), a tractor ($3,000), and a four-wheeler ($3,500).

¶8. The chancellor awarded Varena the following: personal property valued at $27,243; the five-acre property valued at $16,000; the four-acre property valued at $14,500; $35,353.82, representing approximately one-half of Tony's retirement account; $150 from Tony's checking account; and $18,210.50, representing one-half of the equity in the marital home. The chancellor awarded Tony the following: personal property valued at $42,585; the marital home valued at $110,000; the remaining equity in the marital home; the remaining value in his retirement account; and $200 from Varena's checking account. However, the chancellor ordered Tony responsible for all the marital debts since he was awarded the marital home, the GMC truck, the tractor, and the four-wheeler.

¶9. As previously stated, the chancellor initially awarded Varena $650 per month in rehabilitative alimony for three years but later decreased the award to $600 per month for six months.

3

**STANDARD OF REVIEW**

¶10. This Court has a limited standard of review in domestic-relations cases, and "[u]nder the standard of review [for] a [chancellor]'s findings of fact, particularly in the areas of divorce, alimony[,] and child support, this Court will not overturn the [chancellor's decision] on appeal unless [his] findings were manifestly wrong." *In re Dissolution of Marriage of Wood*, 35 So. 3d 507, 512 (¶8) (Miss. 2010). "The distribution of marital assets in a divorce will be affirmed if 'it is supported by substantial credible evidence.'" *Lowrey v. Lowrey*, 25 So. 3d 274, 285 (¶26) (Miss. 2009) (quoting *Bowen v. Bowen*, 982 So. 2d 385, 393-94 (¶32) (Miss. 2008)). "Additionally, the decision of whether to award alimony, and if so, what amount, is left to the chancellor's discretion." *Ilsley v. Ilsley*, 160 So. 3d 1177, 1181 (¶9) (Miss. Ct. App. 2014).

**DISCUSSION**

**I.    Equitable Distribution**

¶11. In his first issue on appeal, Tony argues the chancellor erred in calculating the division of the parties' property. Tony does concede that the chancellor properly analyzed the division under *Ferguson v. Ferguson*, 639 So. 2d 921 (Miss. 1994). Varena argues that Tony failed to raise this specific issue before the chancellor. As a general rule, issues raised for the first time on appeal are barred from our review. *Ory v. Ory*, 936 So. 2d 405, 409 (¶9) (Miss. Ct. App. 2006). However, since the chancellor miscalculated the parties' marital assets, we will address the merits.

¶12. Tony's argument is that the chancellor calculated the equity in the marital home twice,

4

once in the real-property category and once in the "checking/savings accounts and other investments" category. Tony argues that in placing the equity in the checking/savings-account category, the chancellor should have deducted the equity ($36,421) from the real-property category. Tony claims his real-property award should have been valued at $18,210.50, which is the value of the marital home ($110,000) minus both the mortgage debt ($73,579) and the equity awarded to Varena ($18,210.50).

¶13.   In her final judgment, the chancellor classified the parties' assets and debts in separate categories. The first category was titled "Personal Property totaling $69,828," and listed all of the items the parties considered to have value. The second category was titled "Real Property totaling $140,500," and listed and described the three pieces of property and their values. The third category was titled "Marital Debts totaling $93,012," and included the mortgage debt, the GMC truck, the tractor, and the four-wheeler. The fourth category was titled "Checking/Savings Accounts and Other Investments totaling $71,407.64," and included the parties' checking accounts, Tony's retirement account, and the equity in the marital home. Interestingly, the $71,407.64 total cited by the chancellor is the total of Tony's retirement account and the parties' checking accounts, but does not include the equity. When the equity is added, the total is $107,828.64. It appears that although the chancellor listed the equity in the "checking/savings" category, she did not initially add the $36,421 in equity to the total amount for the "checking/savings" category. It is only in the amended judgment where the chancellor included the amount of equity in the total ($107,828.64). Regardless, the chancellor intended to divide the items in that category equally, awarding each party

5

$53,914.32.

¶14. Tony cites to *Jackson v. Jackson*, 172 So. 3d 179 (Miss. 2015), for support. In *Jackson*, the supreme court reversed because "the chancellor erroneously counted the mortgage balance both as a liability and as a reduction to the value of an asset." *Id*. at 182 (¶8). The chancellor had reduced the marital home's "stipulated value by the value of the mortgage balance and allocated only the home's equity as an asset to [the wife]." *Id*. at 180 (¶5). This error by the chancellor caused the wife's "net distribution of the marital estate to be undervalued by $50,103." *Id*. at 182 (¶8).

¶15. Here, the chancellor counted the equity twice, once in the real-property category and once in the "checking/savings" category. As a result of the chancellor's miscalculation, the net value of Tony's assets was overstated. Like the court in *Jackson*, we must reverse and remand for the chancellor to correct the mathematical error and revise the distribution of marital assets and liabilities. *See id.* (equitable division does not require an equal division, but it "must be based on correct calculations").

## II.    Rehabilitative Alimony

¶16. In his other issue on appeal, Tony contends the chancellor erred in awarding Varena rehabilitative alimony. "Rehabilitative alimony provides for a party who is trying to become self-supporting and prevents that party from becoming destitute while searching for a means of income. Moreover, 'the primary purpose of rehabilitative alimony is to give the former spouse the opportunity to enter the work force.'" *McCarrell v. McCarrell*, 19 So. 3d 168, 170 (¶8) (Miss. Ct. App. 2009) (quoting *Alexis v. Tarver*, 879 So. 2d 1078, 1080 (¶7) (Miss.

6

Ct. App. 2004)) (internal citation omitted).

¶17. Ordinarily, the reversal of a chancellor's division of marital property requires reversal of an alimony award. *Mace v. Mace*, 818 So. 2d 1130, 1134 (¶16) (Miss. 2002). However, the decision to award rehabilitative alimony "is not considered during equitable distribution." *Lauro v. Lauro*, 847 So. 2d 843, 849 (¶15) (Miss. 2003); *see also Hensarling v. Hensarling*, 824 So. 2d 583, 595 (¶39) (Miss. 2002) (court affirmed award of rehabilitative alimony even though it reversed for chancellor to reevaluate value of marital estate); *Rhodes v. Rhodes,* 52 So. 3d 430, 447 (¶72) (Miss. Ct. App. 2011) ("[A]n award of rehabilitative alimony is exempted from the general proposition that reversal of one financial award requires reversal of all."); *Lauro v. Lauro*, 924 So. 2d 584, 588 (¶14) (Miss. Ct. App. 2006) ("Periodic alimony is to be reconsidered when the marital estate is redistributed under principles of equitable distribution. However, rehabilitative alimony is not considered during equitable distribution."). "Rehabilitative periodic alimony is an equitable mechanism which allows a party needing assistance to become self-supporting without becoming destitute in the interim." *Hubbard v. Hubbard*, 656 So. 2d 124, 130 (Miss. 1995).

¶18. In this instance, the chancellor evaluated the award of alimony under the factors enunciated in *Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993). The chancellor divided the marital estate in order to adequately provide for Varena, eliminating the need for periodic alimony. In her amended judgment, the chancellor noted that Varena was employed and working towards self-sufficiency but her monthly expenses still exceeded her monthly income. The chancellor stated that "[c]learly, the award of rehabilitative alimony was

7

intended to . . . allow [Varena] to start anew without becoming destitute." The chancellor reduced the award of rehabilitative alimony from $650 per month for three years to $600 per month for six months, finding that six months was "a reasonable amount of time to allow [Varena] to address the financial issues involved in her becoming self-sufficient in her living conditions." We can find no abuse of discretion by the chancellor in awarding Varena rehabilitative alimony. This issue is without merit.

¶19. **THE JUDGMENT OF THE WASHINGTON COUNTY CHANCERY COURT IS AFFIRMED IN PART, AND REVERSED AND REMANDED IN PART FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO THE APPELLANT AND ONE-HALF TO THE APPELLEE.**

**IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR. JAMES, J., NOT PARTICIPATING.**